1
2
3
4
5
6
7

**ABRAHAM, FRUCHTER
   & TWERSKY, LLP**
IAN D. BERG (SBN 263586)
IBerg@aftlaw.com
TAKEO A. KELLAR (SBN 234470)
TKellar@aftlaw.com
11622 El Camino Real, Suite 100
San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

8

*Counsel for Plaintiff*

9

UNITED STATES DISTRICT COURT

10

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11<br>12<br>13<br><br>14<br><br>15<br><br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br><br>24 | BRICKMAN INVESTMENTS INC., Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>PROGENITY, INC., HARRY STYLLI, ERIC D'ESPARBES, JEFFREY ALTER, JOHN BIGALKE, JEFFREY FERRELL, BRIAN L. KOTZIN, SAMUEL NUSSBAUM, LYNNE POWELL, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, RAYMOND JAMES & ASSOCIATES, INC. and BTIG, LLC,<br><br>                              Defendants. | Case No. **'20 CV 1795 BEN LL**<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**<br><br><u>DEMAND FOR JURY TRIAL</u> |

25
26
27
28

---

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Plaintiff Brickman Investments Inc. ("Plaintiff"), brings this action individually and on behalf of all others similarly situated, alleging the following based upon personal knowledge and upon information and belief based on an investigation conducted by counsel, which included a review of the public Securities and Exchange Commission ("SEC") filings of Progenity, Inc. ("Progenity" or the "Company"), Company press releases, analyst reports, media reports, and other public reports and information regarding the Company. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed through discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of Progenity common stock pursuant and/or traceable to the registration statement and related prospectus (the "Registration Statement"), issued in connection with Progenity's initial public offering (the "IPO") on or about June 22, 2020, seeking remedies under the Securities Act of 1933 against Progenity, certain officers and directors of Progenity (the "Individual Defendants") and the IPO underwriters ("Underwriter Defendants") (collectively "Defendants").

2.     Progenity is a biotechnology company that specializes in developing and commercializing molecular testing products and precision medicine applications, including *in vitro* molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis.

3.     Progenity conducted its IPO on June 22, 2020, with Defendants selling over 6.6 million shares of Progenity common stock at a price of $15.00 per share, generating over $100 million in gross offering proceeds.

4.     The Registration Statement for the IPO contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make the necessary disclosures required under

the rules and regulations governing its preparation.  Specifically, the Registration Statement failed to disclose that: (i) Progenity had overbilled government payors by $10.3 million in 2019 and early 2020, which resulted in materially overstated revenues, earnings and cash flows from operations for the historical financial periods provided in the Registration Statement; (ii) Progenity would need to refund this overpayment in the second quarter of 2020, adversely impacting its quarterly results; and (iii)  Progenity was suffering from accelerating negative trends in the second quarter of 2020 with respect to the Company's testing volumes, revenues and product pricing.

5.     Within two months of the IPO, the price of Progenity stock fell nearly 50%, from an offering price of $15.00 per share to $7.71 per share by August 14, 2020.  This action seeks to recover damages for Progenity investors.

## JURISDICTION AND VENUE

6.     The claims alleged herein arise under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77k, 77l(a)(2) and 77o]. This Court has jurisdiction over the subject matter of this action pursuant to § 22 of the Securities Act.

7.     This Court has personal jurisdiction over each of the Defendants and venue is proper in this District. Progenity is headquartered in San Diego, California, within this District.  Also, within this District, Defendants drafted at least a portion of the offering materials issued in connection with Progenity's IPO, disseminated the misleading statements, and solicited stock purchasers.  Each of the Underwriter Defendants (defined below) have substantial operations and/or conduct substantial business in California.

## PARTIES

8.     Plaintiff Brickman Investments Inc. purchased Progenity common stock pursuant to the Prospectus (defined below) and Registration Statement issued in connection with the IPO and has been damaged thereby.

1      9.      Defendant Progenity, Inc., is a biotechnology company based in San

2  Diego, California.  The Company's common stock trades on the NASDAQ under

3  the ticker symbol "PROG."

4      10.     Defendant Harry Stylli ("Stylli") served as Progenity's Chief Executive

5  Officer ("CEO") and Chairman of the Progenity Board of Directors (the "Board") at

6  the time of the IPO.

7      11.     Defendant Eric d'Esparbes ("d'Esparbes") served as Progenity's Chief

8  Financial Officer ("CFO") at the time of the IPO.

9      12.     Defendant Jeffrey D. Alter served as a member of the Board at the time

10  of the IPO.

11      13.     Defendant John T. Bigalke served as a member of the Board at the time

12  of the IPO.

13      14.     Defendant Jeffrey A. Ferrell served as a member of the Board at the

14  time of the IPO.

15      15.     Defendant Brian L. Kotzin served as a member of the Board at the time

16  of the IPO.

17      16.     Defendant Samuel R. Nussbaum served as a member of the Board at

18  the time of the IPO.

19      17.     Defendant Lynne Powell served as a member of the Board at the time

20  of the IPO.

21      18.     The defendants identified in ¶¶10-17 above are referred to herein as the

22  "Individual Defendants."  All of the Individual Defendants signed the Registration

23  Statement for the IPO.  Each of the Individual Defendants also reviewed and helped

24  prepare the Registration Statement and, as directors or executive officers of the

25  Company, participated in the solicitation and sale of the Company's common stock

26  to investors in the IPO for their own financial benefit and the financial benefit of

27  Progenity.

28

19.     Defendant Piper Sandler & Co. served as a joint book-running manager and underwriter of Progenity's IPO.

20.     Defendant Wells Fargo Securities, LLC served as a joint-book-running manager and underwriter of Progenity's IPO.

21.     Defendant Robert W. Baird & Co. Incorporated served as an underwriter of Progenity's IPO.

22.     Defendant Raymond James & Associates, Inc. served as an underwriter of Progenity's IPO.

23.     Defendant BTIG, LLC served as an underwriter of Progenity's IPO.

24.     The defendants identified in ¶¶19-23 above are referred to herein as the "Underwriter Defendants."  Collectively, the Underwriter Defendants sold more than 6.6 million Progenity shares in the IPO at $15.00 per share and shared $7 million in underwriting discounts and commissions.  Their failure to conduct adequate due diligence in connection with the IPO and the preparation of the Registration Statement was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

25.     Progenity is a biotechnology company that develops and commercializes molecular testing products and precision medicine applications, with a focus on *in vitro* molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis.  At the time of the IPO, the Company's product pipeline included a rule-out test for preeclampsia and a proprietary ingestible capsule to treat gastrointestinal disorders, among other diagnostic tools and treatments.

26.     Since the Company's inception, it has accessioned 1.5 million diagnostic tests.  Leading into its IPO, Progenity claimed that its testing volume was accelerating and that the Company was positioned for continued growth.  Progenity emphasized to investors that it had achieved consistent year-over-year test volume

growth since 2010 and was continuing to develop and commercialize new, innovative products related to prenatal care, pregnancy and molecular diagnostics.

27.     In 2015, Progenity launched both its Innatal Prenatal Screen, a Non-Invasive Prenatal Testing, or "NIPT," offering and its Preparent Carrier Test, followed by the launch of its Riscover Hereditary Cancer Test in 2017.

28.     Prior to the IPO, in March 2020, Progenity claimed to have reached a settlement with respect to various federal and state governmental entities to resolve investigations into the Company's marketing, sales and billing practices, in particular regarding legacy billing practices for Progenity's NIPT and microdeletion tests and the provision of alleged kickbacks or inducements to physicians and patients.  Progenity agreed to pay $49 million in the aggregate over a five-year period to resolve civil claims contemplated by the U.S. Attorney's Office for the Southern District of California, the U.S. Attorney's Office for the Southern District of New York, and various offices of state Attorneys General.  In addition, the Company entered into a deferred prosecution agreement to avoid criminal penalties pursuant to which it agreed to enhance its compliance programs and reporting and disclosure policies and practices.

29.     The fact that the Company had purportedly resolved the negative monetary impact of its improper billing practices prior to the IPO was of material importance to investors, as was the Company's ability to maintain its testing volume and revenue growth.

30.     On May 27, 2020, Progenity filed with the SEC on Form S-1 the Registration Statement.  The Registration Statement was declared effective by the SEC on June 18, 2020, after certain amendments; and, on June 22, 2020, the Company filed its final prospectus (the "Prospectus") (which incorporated and formed part of the final Registration Statement) with the SEC on Form 424B4.  The Registration Statement was used to sell over 6.6 million shares of Progenity common

stock to the investing public at a price of $15.00 per share, generating over $100 million in gross offering proceeds.

31.   The Registration Statement was negligently prepared and contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing their preparation.

32.   The Registration Statement failed to disclose that Progenity had overstated its revenues for 2019 and the first quarter of 2020 by more than $10 million because the Company had overbilled government payors during these periods.  This overstatement of historical revenues consequently materially inflated the Company's profits and profit margins.  Also, because Progenity was required to refund overbilled government payors, those refunds had the effect of materially reducing the Company's revenues, profits and cash flows from operations by more than $10 million in the second quarter of 2020.  The following financial results in the Registration Statement were materially inaccurate:

| | Year Ended December 31, | | Three Months Ended March 31, | |
| | 2018 | 2019 | 2019 | 2020 |
| | (in thousands, except share and per share data) | | (in thousands, except share and per share data) (unaudited) | |
| Revenue | $ 127,974 | $ 143,985 | $ 47,507 | $ 16,828 |
| Cost of sales | 92,076 | 100,492 | 24,421 | 26,570 |
| Gross profit | 35,898 | 43,493 | 23,086 | (9,742) |
| Operating expenses: | | | | |
| Research and development | 48,712 | 63,400 | 15,248 | 11,240 |
| Selling and marketing | 50,187 | 58,888 | 15,567 | 14,436 |
| General and administrative | 51,238 | 61,324 | 14,278 | 17,108 |
| Total operating expenses | 150,137 | 183,612 | 45,093 | 42,784 |
| Loss from operations | (114,239) | (140,119) | (22,007) | (52,526) |
| Interest expense | (9,091) | (9,199) | (2,269) | (2,302) |
| Equity loss of equity method investee | (2,327) | — | — | — |
| Interest and other income, net | 1,801 | 575 | 257 | (20) |
| Loss before taxes | (123,856) | (148,743) | (24,019) | (54,848) |
| Income tax expense (benefit) | 5,250 | (706) | — | (37,696) |
| Net loss | $ (129,106) | $ (148,037) | $ (24,019) | $ (17,152) |
| Dividend paid to preferred stockholders | — | (3,652) | (3,652) | — |
| Stock dividend on exchange of Series A-1 for Series B Preferred Stock | — | (27,637) | — | — |
| Stock dividend on Series B Preferred Stock | — | (49,501) | — | — |
| Net loss attributable to common stockholders | $ (129,106) | $ (228,827) | $ (27,671) | $ (17,152) |
| Net loss per share attributable to common stockholders, basic and diluted | $ (27.72) | $ (46.87) | $ (5.88) | $ (3.43) |

33.   The Registration Statement also stated that the Company would pay $49 million to rectify the Company's past billing non-compliance and related alleged wrongdoing, without disclosing that Progenity had overbilled government payors an

additional $10.3 million in 2019 and early 2020.  Thus, the Registration Statement understated the negative impact that Progenity's billing errors would have on Progenity's cash flows by at least 20%.  The Registration Statement stated in pertinent part:

> On March 31, 2020, we reached an agreement on the monetary terms with the DOJ and the State of New York (with the State of New York Attorney General representing or facilitating the interests of all States participating in the settlement, which we refer to collectively as the State AGs) with respect to relevant government health benefit programs to resolve all of the government's outstanding civil and criminal investigations, including the investigations by the U.S. Attorney's Office for the Southern District of California and the U.S. Attorney's Office for the Southern District of New York, as well as the investigation by the State AGs. The terms of this agreement in principle contemplate that we will enter into a civil settlement agreement providing that we will pay $49.0 million in the aggregate over a five-year period . . ..

34.    The Registration Statement also touted Progenity's "consistent year-over-year test volume growth" in the years leading up to the IPO, even though the Company was suffering from a severe and accelerating downturn in the sales of its testing products and related revenues at the time of the IPO.  The Registration Statement stated in pertinent part:

> Since 2010, our molecular testing business has achieved consistent year-over-year test volume growth through our robust product portfolio and our strong commercial organization. Our internal core competencies, deep research and development pipeline and strategic acquisitions of novel technologies have fueled our innovation in women's health, supporting the development and launch of complementary molecular testing products that inform critical healthcare decision-making across a woman's lifetime.

35.    The Registration Statement acknowledged that Progenity's business had been impacted by declines in testing volumes beginning in March 2020 as a result of the COVID-19 pandemic.  However, the Registration Statement claimed

that Progenity's business was "resilient" and had already "observed positive signs of recovery" at the time of the IPO.  This representation was materially false and misleading because it failed to disclose that Progenity was suffering accelerating sequential declines in its testing-related volumes during the second quarter of 2020. Furthermore, Progenity was suffering an undisclosed 8% sequential decline in revenues (when factoring in various accruals), accelerating year-over-year revenue declines and deterioration in pricing for its products with long-term negative implications for the Company's revenues, profits and cash flows from operations. The Registration Statement stated in pertinent part:

> Since our inception, we have accessioned approximately 1.5 million tests in the United States and the growth rate of our test volume was accelerating …. The figure below shows our test volume growth from 2016 through 2019, as well as the first quarter of 2020, in which quarter we observed volumes largely consistent with the fourth quarter of 2019 despite the challenges presented by the COVID-19 pandemic. We believe our business is resilient and we have observed positive signs of recovery so far.



> *  *  *

> Beginning in March 2020, we began to observe significant declines in the volumes of our molecular tests as well as the pathology

tests conducted by Avero Diagnostics due to the impact of the COVID-19 pandemic and work-from-home policies and other operational limitations mandated by federal, state and local governments as a result of the pandemic. However, we believe our business is resilient and we have observed positive signs of recovery so far. While we are implementing mitigation strategies to address these limitations, such as supporting patients and physicians virtually, there can be no assurance that the rate of decline in our testing volumes will not continue or accelerate in future periods. Our initial assessment of the impact of the COVID-19 pandemic is that our NIPT test volumes have proved more resilient than our carrier screening test volumes; however, the comparative impact may change over time.

36.     These issues, which were known to Defendants, arose from circumstances existing before the IPO, but Defendants failed to disclose the material adverse effects on the Company's business and financial results until after the IPO. The Registration Statement misleadingly presented these same issues as "future" contingent risks without disclosing the adverse material facts that had already occurred.  For example, the Registration Statement stated in pertinent part:

> We have implemented compliance policies and procedures intended to train and monitor our sales, billing, marketing and other personnel. Our efforts to implement appropriate monitoring of such personnel are ongoing and we have experienced situations in which employees may have failed to fully adhere to our policies and applicable laws in the past. There can be no assurance that we will not experience similar issues in the future.

37.     These adverse facts and circumstances detailed above were known trends, uncertainties and risks that required disclosure in the Registration Statement. Item 303 of SEC Regulation S-K requires the disclosure of "any known trends or uncertainties that have had or that [a] registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  In addition, Item 105 of Regulation S-K requires disclosure in the Registration Statement of "the most significant factors that make an investment in the registrant or offering speculative or risky," and an explanation of

"how the risk affects the registrant or the securities being offered." The Registration Statement failed to disclose material facts necessary to apprise purchasers of the true risks inherent in investing in the Company.

38.     On July 23, 2020, Progenity announced that it had reached a partial resolution with various government entities related to its past business, promotional and billing practices. Progenity entered into a non-prosecution agreement with the DOJ to avoid criminal charges in parallel with civil settlements.  Specifically, Progenity agreed to pay $49 million, with $35.8 million going to settle federal claims and an additional $13.2 million going to settle outstanding claims by various states Attorneys General. Progenity agreed also to a five-year "corporate integrity agreement" with the Office of the Inspector General of the Department of Health and Human Services, which required Progenity to enhance its internal controls and compliance programs to prevent further unlawful billing practices.

39.     On August 13, 2020, Progenity reported its financial and operating results for the second quarter ended June 30, 2020. The Company reported a dramatic slowdown in sales and growing losses.  Progenity generated only $17.3 million in consolidated revenues for the quarter, which was 70% below the prior year. The Company's gross margin fell to -26.5% and its net losses were $53.1 million, or more than three-times the prior year.

40.     Also, on August 13, 2020, Progenity held an earnings call to discuss the Company's second quarter financial results. During the call, Defendant Stylli, Progenity's CEO and Chairman, stated that Progenity had failed to properly bill the government over the preceding 18 months for goods and services rendered.  As a result, Progenity received an overpayment of approximately $10.3 million in 2019 and early 2020 from government payors that the Company was required to refund. This amount was material to the Company's financial results, representing nearly 25% of Progenity's annual gross profits for 2019.  Factoring in the Company's $10.3 million provision for refunds during the second quarter and the $13.2 million

1   settlement accrual taken in the first quarter, the Company's consolidated revenues

2   had actually declined 8% on a sequential basis.  Defendant Stylli confirmed that the

3   $10.3 million accrual was separate from the Company's settlements with various

4   government entities.

5       41.    Defendant d'Esparbes, Progenity's CFO, meanwhile stated that the

6   Company's average selling price ("ASP") per test had suffered sustained declines

7   during the quarter.  These declines were due to the $10.3 million refund accrual, as

8   well as a deterioration in the Company's product mix towards lower cost items such

9   as NIPT tests.  This was a consequence of Progenity's ongoing in-network transition,

10   which offered lower average rates.  The lower ASP for Progenity tests materially

11   impacted the Company's margins during the second quarter and was expected to

12   have a continuing negative impact on the Company's gross profit margins and cash

13   flows from operations.

14       42.    Following its IPO, Progenity's stock price has significantly declined

15   from its offering price of $15.00 per share, closing at $7.71 per share on August 14,

16   2020.

17       **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

18       43.    Plaintiff brings this action as a class action on behalf of all purchasers

19   of Progenity common stock pursuant and/or traceable to the Registration Statement

20   (the "Class").  Excluded from the Class are Defendants and their families; the

21   officers, directors and affiliates of Defendants and members of their immediate

22   families; the legal representatives, heirs, successors or assigns of any of the

23   foregoing; and any entity in which any Defendant has or had a controlling interest.

24       44.    The members of the Class are so numerous that joinder is impracticable.

25   Progenity common stock is actively traded on the NASDAQ and approximately 6.6

26   million of shares were sold in the IPO.  The exact number of Class members is

27   unknown at this time and can only be ascertained through discovery, but Plaintiff

28   believes there are thousands of members in the Class. Record owners and other Class

1  members may be identified from records procured from or maintained by the
2  Company or its transfer agent and may be notified of the pendency of this action
3  using a form of notice similar to that customarily used in securities class actions.

4      45.    Common questions of law and fact exist as to all Class members and
5  predominate over any questions solely affecting individual Class members,
6  including:

7          (a)    whether Defendants violated the Securities Act, as alleged
8  herein;

9          (b)    whether the Registration Statement misrepresented or omitted
10  material information in violation of the Securities Act; and

11          (c)    whether and to what extent Class members have sustained
12  damages.

13      46.    Plaintiff's claims are typical of the claims of the Class, as all Class
14  members were similarly affected by Defendants' conduct.

15      47.    Plaintiff will fairly and adequately protect the interests of Class
16  members and has retained counsel competent and experienced in securities class
17  actions.

18      48.    A class action is superior to all other available methods for the fair and
19  efficient adjudication of this controversy.  Because the damages suffered by
20  individual Class members may be relatively small, the expense and burden of
21  individual litigation make it exceedingly difficult, if not impossible and
22  impracticable, for Class members to individually redress the wrongs alleged. There
23  will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of § 11 of The Securities Act
### Against All Defendants

27      49.    Plaintiff repeats, incorporates, and realleges each and every allegation
28  set forth above as if fully set forth herein.

50.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

51.     This Count is brought under § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

52.     The Registration Statement for the IPO contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

53.     Progenity is the registrant for the IPO.  Defendants were responsible for the contents and dissemination of the Registration Statement.  The Individual Defendants signed or authorized the signing of the Registration Statement on their behalves.  The Underwriter Defendants marketed and underwrote the IPO and sold the Progenity stock issued in the IPO to Plaintiff and the Class.

54.     As the issuer of the shares, Progenity is strictly liable to Plaintiff and the Class for the Registration Statement's material misstatements and omissions.  Signatories of the Registration Statement may also be strictly liable to Plaintiff and the Class for such material misstatements and omissions.  None of the Defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Registration Statement were complete, accurate or non-misleading.

55.     By reason of the conduct alleged herein, Defendants violated § 11 of the Securities Act. Plaintiff and the Class members purchased common stock pursuant to, or traceable to, the Registration Statement and have sustained damages as a result.  The value of the stock has substantially declined due to Defendants' violations.  At the time of their purchases, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

56.     Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action.  Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

**COUNT II**

**For Violation of § 12 of The Securities Act**
**Against Progenity and the Underwriter Defendants**

57.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

58.     This Count is brought by Plaintiff pursuant to § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Class against Progenity and the Underwriter Defendants.

59.     The statements referred to herein were each made in a "prospectus" as that term is defined in § 2(a)(10) of the Securities Act [15 U.S.C. § 77b(a)(10)], which contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The actions of the Defendants sued in this count sold common shares of Progenity by way of the Prospectus dated June 22, 2020, for their personal financial gain. Those actions included participating in the preparation of the Prospectus and other materials used in the sale of Progenity common stock.

60.     The Defendants named in this Count sold and/or solicited the sale of Progenity common stock offered pursuant to the Prospectus for their individual financial gain.

61.     Plaintiff and the other members of the Class purchased or acquired Progenity common stock pursuant to a Prospectus. Plaintiff and the other members of the Class did not know, or in the exercise of reasonable diligence, could not have

known, of the untruths and omissions contained in or made in connection with the Prospectus.

62.  Plaintiff and the other members of the Class have sustained injury and suffered damages.

By reason of the conduct alleged herein, the Defendants named in this Count violated § 12(a)(2) of the Securities Act.  Accordingly, Plaintiff and the other members of the Class who hold the Progenity common stock pursuant to the Prospectus have the right to rescind and recover the consideration paid for the Company's shares and hereby elect to rescind and tender their shares of the Company to the Defendants sued herein. Class members who have sold their Progenity common stock are entitled to rescissory damages.

## COUNT III

### For Violation of § 15 of The Securities Act
### Against Progenity and the Individual Defendants

63.  Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

64.  This Count is brought under § 15 of the Securities Act, 15 U.S.C. § 77o, against Progenity and the Individual Defendants.  This Count does not allege, and does not intend to allege, fraud or fraudulent intent, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

65.  As detailed herein, each of the Defendants committed primary violations of the Securities Act by committing conduct in contravention of §§ 11 and 12(a)(2) of the Securities Act.

66.  The Individual Defendants were each control persons of Progenity by virtue of their positions as directors, senior officers and/or significant shareholders of the Company.  They each had direct and/or indirect business and/or personal relationships with other directors, officers and/or major shareholders of the Company.  The Company also controlled the Individual Defendants, given the

1   influence and control the Company possessed and exerted over the Individual

2   Defendants and all of its employees.

3       67.     By reason of the conduct alleged herein, these Defendants violated § 15

4   of the Securities Act, and Plaintiff and the Class have suffered harm as a result.

5                           **PRAYER FOR RELIEF**

6       WHEREFORE, Plaintiff prays for relief and judgment, as follows:

7       A.      Determining that this action is a proper class action, designating

8   Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule

9   23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

10      B.      Awarding compensatory damages in favor of Plaintiff and the other

11  Class members against all Defendants, jointly and severally, for all damages

12  sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial,

13  including interest thereon;

14      C.      Awarding Plaintiff and the Class their reasonable costs and expenses

15  incurred in this action, including counsel fees and expert fees;

16      D.      Awarding rescission or a rescissory measure of damages; and

17      E.      Such other and further relief as the Court may deem just and proper.

18                         **JURY TRIAL DEMANDED**

19      Plaintiff hereby demands a trial by jury.

20

21  DATED: September 11, 2020              Respectfully submitted,

22                                        **ABRAHAM, FRUCHTER**
                                          **& TWERSKY, LLP**
23

24

25                                        _____/s/ *Ian D. Berg*_____
                                          IAN D. BERG (SBN 263586)
26                                        IBerg@aftlaw.com
                                          TAKEO A. KELLAR (SBN 234470)
27                                        TKellar@aftlaw.com
28                                        11622 El Camino Real, Suite 100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Diego, CA 92130
Telephone: (858) 764-2580
Facsimile: (858) 764-2582

*Counsel for Plaintiff*

## CERTIFICATION OF BRICKMAN INVESTMENTS INC.
### IN SUPPORT OF CLASS ACTION COMPLAINT

Brickman Investments Inc. ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.    During the proposed Class Period, plaintiff executed the following transactions in the stock of Progenity, Inc.  See Attachment A:

5.    In the past three years, plaintiff has not served nor sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3

day of, September 2020.

_____BRICKMAN

INVESTMENTS INC.

ATTACHMENT A

| Date | Action | Amount | Price |
|------|--------|--------|-------|
| June 19, 2020 | Buy | 100 shares | $15.00 |